UNITED STATES of America, Plaintiff–Appellee,

v.

Terrance Ray TAYLOR, Defendant–Appellant.

No. 89–2634.

United States Court of Appeals, Fifth Circuit.

June 3, 1991.

Linda M. Gassaway, Waco, Tex. (Court-appointed), for defendant-appellant.

James L. Turner, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON, and BARKSDALE, Circuit Judges.

JOHNSON, Circuit Judge:

Terrance Ray Taylor appeals from his conviction under 18 U.S.C. § 751(a) for unauthorized departure from a halfway house. He challenges 1) the sufficiency of the evidence against him, 2) the district court's refusal to appoint counsel to represent him at sentencing, and 3) the calculation of his sentence under the federal sentencing guidelines. After a careful review of the record and the parties' briefs, this Court will uphold Taylor's conviction, but will remand the case for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

In 1986 Terrance Ray Taylor was convicted of altering a money order and sentenced to five years in prison. After serving nearly two years in prison, in September 1988 Taylor was transferred from a federal correctional facility to New Directions, a halfway house in Houston, Texas. The Bureau of Prisons had calculated a mandatory release date for Taylor of November 17, 1988. Twenty days before that date, on October 28, 1988, Taylor left the halfway house and did not return. Shortly thereafter he was arrested, without incident, at the auto repair shop where he had been working since being transferred to the halfway house.

Taylor was indicted, under 18 U.S.C. § 751(a),[1] for willfully escaping from federal custody. The district court initially assigned the federal public defender to represent Taylor, but Taylor waived his right to counsel, asking to represent himself. The district court properly allowed Taylor to do so, but appointed an attorney from the public defender's office to act as standby counsel during the trial. The jury found Taylor guilty of escape. After he was convicted, Taylor withdrew his request to represent himself, asking the district court to appoint counsel to represent him at sentencing. The district court ruled that Taylor's initial waiver of his right to counsel was effective and still binding, and denied Taylor's request. The district court did allow the attorney from the federal public defender's office to continue to serve as standby counsel. The district court sentenced Taylor to serve thirty-three months in prison. In response to a motion by Taylor, the district court later reduced Taylor's sentence to twenty-one months. Nonetheless, Taylor appeals, arguing 1) that the evidence was not sufficient to support his conviction, 2) that it was error to deny him counsel at sentencing, and 3) that he was not properly sentenced under the federal sentencing guidelines.

## II. DISCUSSION

### A. The Evidence Supporting Taylor's Conviction for Escape

■ A conviction for escape under § 751(a) requires proof of three elements. The Government must show that the defendant made 1) an unauthorized departure or escape, 2) from custody of an institution where the prisoner is confined by direction of the Attorney General, 3) where the custody or confinement is by virtue either of arrest for a felony or conviction of any offense. *United States v. Harper*, 901 F.2d 471, 473 (5th Cir.1990); *United States*

---

1. Section 751(a) provides:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, ... shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both.... 18 U.S.C. § 751(a).

*v. Spletzer,* 535 F.2d 950, 953 (5th Cir. 1976). Section 751(a) does not require that a defendant have a specific intent to escape; all the prosecution must show is that the defendant knew that his actions would result in his absence from confinement without permission. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).[2] In *Spletzer,* however, this Court held that because both the indictment and the jury instructions in that case treated a specific intent to escape as an element of the crime, under the doctrine of the law of the case specific intent became an element of the crime for Spletzer. 535 F.2d at 954. The same rule obtains here. Taylor was indicted for willfully escaping federal custody, and the district court instructed the jury, without objection, that specific intent was an element of the crime. Thus, as in *Spletzer,* the Government had to prove that Taylor acted with a specific intent to avoid further confinement.

 Taylor contends that the evidence was not sufficient to allow the jury to conclude that he had such an intent. To prevail on such an argument Taylor must overcome a high hurdle: this Court must affirm the jury's verdict if, considering all of the evidence before the jury in the light most favorable to the Government, the jury could rationally have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Hopkins,* 916 F.2d 207, 212 (5th Cir.1990). Having reviewed all of the evidence before the jury, this Court cannot say that the jury could not rationally have concluded that Taylor knew what he was doing when he left New Directions, and that he left with an intent to avoid further confinement there.

The Government introduced into evidence a document called an "acknowledgment of custody" which Taylor had signed upon arriving at New Directions. By that document, Taylor acknowledged that he understood that

> federal inmates residing at New Directions Club, Inc., are in the custody of the Attorney General of the United States. Inmates who leave the New Directions facility without permission from the Federal Program Manager, or his authorized representative, shall be deemed an escapee from the custody of the Attorney General. I also understand that federal inmates who leave their place of employment (or training) without permission from the Federal Program Manager, or his authorized representative, or who fail to return to New Directions within the time prescribed, shall be deemed an escapee from the custody of the Attorney General of the United States.

The Government also showed that Taylor left the New Directions facility without authorization on October 28, 1988, and did not return. Taken together, the jury could rationally have found that these facts established each of the elements of the crime of escape. They show that Taylor 1) made an unauthorized departure 2) from a facility where he was confined at the direction of the Attorney General, 3) which confinement was the result of his conviction for altering a money order. Further, the evidence produced by the Government—particularly Taylor's acknowledgment of custody and the fact that he did not return to New Directions—allowed the jury to infer that Taylor knew he was not free to leave, and that he left with an intent to avoid confinement at New Directions.

Although Taylor argued that his early departure was the result of an honest mistake—he contended that he thought that he was entitled to twenty additional days off for good time—the jury was not required to accept Taylor's explanation. Without

---

**2.** In *Bailey* the Court held that in order to establish the crime of escape under § 751(a), the Government need not prove that a defendant acted "with an intent to avoid confinement" or that he "acted with a purpose—that is, the conscious objective—of leaving [federal custody] without authorization." 444 U.S. at 404, 100 S.Ct. at 631. Instead, the Court held, "proof that a defendant acted knowingly is sufficient to support a conviction [for escape]." *Id.* That is, "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.*

question, the evidence as to Taylor's state of mind was in conflict. It is precisely this sort of conflict, however, that the jury is called upon to resolve. *See United States v. Merkt*, 764 F.2d 266, 272 (5th Cir.1985) (intent is a question of fact that the jury must determine under the totality of the circumstances and after evaluating all of the evidence). This Court should not and cannot invade the function of the jury. Taylor's conviction must stand.

### B. *Representation by Counsel*

■ Taylor next argues that the district court erred in refusing to appoint counsel to represent him at the sentencing phase of his trial. As noted above, a federal public defender was initially appointed to represent Taylor at trial, but Taylor refused that appointment, requesting to represent himself. The trial judge allowed Taylor to waive his right to counsel and proceed *pro se*, but the federal public defender attended the trial as standby counsel for Taylor. The standby counsel played a significant role in the trial, frequently consulting with Taylor and assisting him in presenting a motion for acquittal. After the jury returned its verdict, Taylor attempted to withdraw his waiver of his right to counsel, requesting that he be represented by counsel at sentencing. The district court denied Taylor's request on the basis that Taylor's initial election to proceed *pro se* was valid and still effective, and ordered instead that the federal public defender continue to serve as standby counsel.

■ The district court erred when it refused to allow Taylor to retract his waiver of his right to counsel. This Court has long held that a defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right. *Beto v. Martin*, 396 F.2d 432 (5th Cir.1968). Other courts also have consistently recognized that a defendant may change his mind about whether he will represent himself. *See, e.g., United States v. Robinson*, 913 F.2d 712, 718 (9th Cir.1990); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 517, 107 L.Ed.2d 518 (1990); *United States v.*

*Holmen*, 586 F.2d 322, 324 (4th Cir.1978). Of course, a defendant's rights to waive counsel and to withdraw that waiver are not unqualified. A trial court need not countenance abuse of the right to counsel or the right to waive it. A defendant is not entitled to "choreograph special appearances by counsel," *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984), or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice. *E.g., McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985) (trial court must be wary of late request to change counsel which could impede the prompt and efficient administration of justice); *United States v. Magee*, 741 F.2d 93, 95 (5th Cir.1984) (trial court has discretion whether to grant request to change counsel on the morning of trial).

In this case, however, there is no suggestion whatever that Taylor was attempting to abuse his rights to achieve some mischief, or that granting his request would have interfered in any way with the calendaring of his sentencing. Indeed, it appears from the record that it would not have been at all inconvenient to appoint the standby attorney to represent Taylor. Presumably, that attorney was familiar with the case, as he had attended the trial; his appointment would have been unlikely to delay sentencing. Moreover, the district court did not sentence Taylor on the date originally set for the sentencing hearing anyway, but delayed sentencing for a period of twenty days. The reason for that delay is not clear, but the Government concedes that Taylor was not responsible for the delay. In such circumstances there is no support for the district court's refusal to allow Taylor to withdraw his waiver of counsel.

■ The only remaining question is whether Taylor must show that he was prejudiced by the district court's refusal to appoint counsel to represent him at sentencing. If Taylor is required to show that he was prejudiced by the district court's

action, it is unlikely that he will prevail, because the standby attorney did attend the sentencing hearing, and participated to some extent.

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. It is well settled that this amendment means that a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against him; critical stages of a criminal proceeding are those stages of the proceeding at which the substantial rights of a defendant may be affected. *See, e.g., Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967); *Gideon v. Wainwright,* 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963). Sentencing is a critical stage of a criminal proceeding. *Mempa,* 389 U.S. at 134, 88 S.Ct. at 256. The right to be represented by counsel is a fundamental component of our criminal justice system. *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984).

▉ Given that Taylor had a fundamental right to be represented by counsel at his sentencing, the question before the Court becomes whether the presence of standby counsel satisfies the requirements of the Sixth Amendment. If the assistance of standby counsel qualifies as "the Assistance of Counsel" required by the Sixth Amendment, then Taylor has no claim that he was denied counsel; at most, he could claim that he received ineffective assistance of counsel, and to prevail on such a claim Taylor would have to show that his counsel's performance was deficient and that the deficiency prejudiced him. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On the other hand, if the assistance of standby counsel does not satisfy the Sixth Amendment, then Taylor *was* denied counsel, and

need not show prejudice. *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."). That is, there is a great difference between having a bad lawyer and having no lawyer: if the lawyering is merely ineffective, then the decision to grant relief turns on the degree of incompetence and prejudice to the defendant; if the defendant had no lawyer, prejudice is legally presumed in every case, and the defendant is entitled to relief in every case. *Woodard v. Collins,* 898 F.2d 1027, 1028 (5th Cir.1990) (citing *Cronic* and *Strickland* ). *See also Martin v. McCotter,* 796 F.2d 813, 819–20 (5th Cir.1986) ("if the accused is denied counsel ... the adversary process becomes presumptively unreliable").

Given the limited role that a standby attorney plays, we think it clear that the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment. There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel *not be responsible* —and not be perceived to be responsible—for the accused's defense. Indeed, in many respects, standby counsel is not counsel at all, at least not as that term is used in the Sixth Amendment.

The Supreme Court has held that while the appointment of standby counsel can be a very useful step in a case in which a defendant wishes to represent himself,[3] the

---

**3.** Standby counsel may be as much help to the court as it is to the defendant. By arranging to have standby counsel attend the trial, the trial judge can free himself from having continually to explain rules of evidence, procedure, and the like to the defendant. As such, the standby

counselor serves the court as much as he serves the defendant. *See McKaskle v. Wiggins,* 465 U.S. 168, 183–84, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984) (noting the ability of standby counsel to help "ensure the defendant's compliance with basic rules of courtroom protocol and

proper role of standby counsel is quite limited. *McKaskle v. Wiggins*, 465 U.S. 168, 177–78, 104 S.Ct. 944, 950–51, 79 L.Ed.2d 122 (1984). The defendant preserves actual control over the case he presents to the jury: standby counsel cannot substantially interfere with any significant tactical decisions, cannot control the questioning of witnesses, and cannot speak in place of the defendant on any matter of importance. *Id.* Standby "counsel" is thus quite different from regular counsel. Standby counsel does not *represent* the defendant. The defendant represents himself, and may or may not seek or heed the advice of the attorney standing by. As such, the role of standby counsel is more akin to that of an observer, an attorney who attends the trial or other proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense. Thus, as useful as standby counsel may be when a defendant wishes to represent himself, this Court holds that standby counsel is not "counsel" within the meaning of the Sixth Amendment.[4]

Accordingly, we hold that by refusing to appoint counsel to represent Taylor at sentencing, the district court denied Taylor his fundamental Sixth Amendment right to the assistance of counsel. Because he was denied counsel, and did not simply receive ineffective counsel, Taylor need not show prejudice. The case must be remanded so that Taylor may be resentenced with the assistance of counsel required by the Sixth Amendment.

### C. *Application of the Sentencing Guidelines*

■ Because this Court will remand this case for resentencing, Taylor's arguments as to the errors in the application of the sentencing guidelines are, in large part, moot. In the interest of judicial economy, however, the Court will address one of Taylor's claims, as it is quite likely to rearise upon resentencing. Taylor argues that the district court erred in enhancing his base offense level on the grounds that he committed his offense (the escape) while under a criminal justice sentence and while on escape status. *See* U.S.S.G. §§ 4A1.-1(d), (e). Taylor argues with some force that to enhance a sentence for escape under these provisions results in a "double counting." That is, Taylor argues, he has been sentenced twice for escape: once for the offense itself, and a second time under provisions of the guidelines which authorize an increased sentence for one who commits an offense while on escape status or while under a criminal justice sentence.

■ Unfortunately for Taylor, however, in two recent decisions this Court has squarely rejected his argument. *See United States v. Bigelow*, 897 F.2d 160 (5th Cir.1990) (U.S.S.G. §§ 4A1.1(d) and (e) apply to convictions for escape); *United States v. Vickers*, 891 F.2d 86 (5th Cir. 1989) (same). Taylor acknowledges these decisions. He urges their abrogation. That course of action is not open to this Court: it is the firm rule of this circuit that one panel may not overrule the decisions of another. *E.g., United States v. Fields*, 923 F.2d 358, 360 n. 4 (5th Cir.1991). .

### D. *Miscarriage of Justice*

■ Finally, Taylor argues that he has suffered a miscarriage of justice. To the extent that such an argument simply restates the grounds of error which are

---

procedure" and pointing out that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure").

**4.** A hypothetical situation not too far removed from the facts of this case illustrates the necessity of this rule. Take the case of a defendant who, before trial, does not request to represent himself (or permissibly withdraws an earlier request to represent himself) but who has appointed to assist him only standby counsel, such that he must defend himself at trial. There can

be no question that the defendant in such a case has been deprived of his right to counsel under the Sixth Amendment, and he ought not have to prove—and, under controlling Supreme Court precedent, does not have to prove—that he was prejudiced by the lack of counsel. This Court sees no distinction between this hypothetical case, and the case of a defendant who has the assistance only of standby counsel at sentencing (like Taylor), or arraignment, or voir dire, or any other critical stage of a criminal proceeding.

otherwise identified as cause for reversal, such an argument carries no independent weight and provides no independent basis for reversal. To the extent that Taylor argues that he failed adequately to develop certain facts or defense strategies at trial, he argues in vain. A defendant is entitled to refuse counsel and to represent himself, *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982) (en banc), but his waiver of his right to counsel must be knowingly and intelligently made. *McKaskle,* 465 U.S. at 173, 104 S.Ct. at 948. The requirement that the trial judge inquire into the awareness of a defendant who wishes to represent himself, and into the voluntariness of his decision, is designed precisely to protect both the defendant and the prosecution, by making clear to the defendant that if he does not adequately represent himself he will not be entitled to another trial. Taylor does not dispute that his waiver of counsel was made knowingly, voluntarily, and intelligently. He insisted on refusing experienced counsel. He is entitled to no relief on the basis that he was inadequately represented. *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975).

### III. CONCLUSION

For the reasons stated, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for resentencing.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.