FILED

July 14 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0570

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 166

THE ESTATE OF DONOVAN DONALD,
through the Guardian and Conservator for
Donovan Donald, an Incapacitated Person,

      Plaintiff and Appellant,

  v.

KALISPELL REGIONAL MEDICAL CENTER,
MEDICAL ADVOCACY SERVICES FOR
HEALTHCARE, INC., and EDMOND MASH, L.L.C.,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 07-324(C)
                Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Lee C. Henning, Rebecca J. Henning-Rutz, Henning, Keedy
           & Lee, P.L.L.C., Kalispell, Montana

      For Appellee Kalispell Regional Medical Center:

           Sean Morris, Worden Thane, P.C., Missoula, Montana

      For Appellees Medical Advocacy Services for Healthcare and Edmond Mash:

           Thomas A. Marra, Marra, Sexe, Evenson & Bell, P.C.,
           Great Falls, Montana

Submitted on Briefs:  May 25, 2011

Decided:  July 14, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Donovan Donald (Don) was incapacitated after receiving a traumatic brain injury in an automobile accident in May 2006. His mother, Kathryn Donald (Kathryn), was appointed as guardian and conservator of his Estate. After several months of treatment in Kalispell Regional Medical Center (KRMC or the Medical Center), Don was transferred to another care facility in Missoula, Montana. In the meantime, a dispute arose between the Estate and KRMC over the Medical Center's acceptance or rejection of Medicaid payments for Don's care. As a result, KRMC filed liens against the Estate. The Estate in turn sued the Medical Center for breach of contract, breach of implied covenant of fair dealing, unjust enrichment, breach of fiduciary duty, negligence, and implied contract to accept Medicaid payments. KRMC answered and counter-claimed. The Eleventh Judicial District Court granted the defendants' respective motions for summary judgment. The Estate appeals. We affirm and remand with instructions pertaining to the calculation of prejudgment interest and determination of fees and costs on appeal.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Did the District Court err in granting summary judgment to KRMC and MASH?

¶4 Did the District Court incorrectly interpret and apply the Montana Medicaid Act?

¶5 Did the District Court incorrectly award prejudgment interest to KRMC?

¶6 Did the District Court abuse its discretion in awarding attorney fees?

## FACTUAL AND PROCEDURAL BACKGROUND

3

¶7    On May 16, 2006, Don was in a serious automobile accident that left him with a traumatic brain injury. The driver of the car in which Don was a passenger was insured by Safeco Insurance. The accident was the fault of the other driver, Montana Rockworks' employee Jason Deshazer (the Tortfeasor), who was insured by the Cincinnati Insurance Company (CIC). Don was transported to Kalispell Regional Medical Center where he remained in treatment until July 15, 2006, when he was transferred to Community Medical Center in Missoula. Don's injury was so severe that he was declared incapacitated. He will require physical, mental, and rehabilitation health care services for the remainder of his life. Don did not have health insurance or assets sufficient to cover the costs of his care at KRMC which exceeded $227,900.

¶8    In May 2006, Don's mother Kathryn was appointed Don's temporary guardian and conservator. In June 2006, she was appointed his permanent guardian and conservator. As guardian, Kathryn was responsible for arranging payment for Don's medical bills. In late May 2006, considering Medicaid as a payment option, Kathryn visited the office of the Medical Advocacy Services for Healthcare, Inc. (MASH) and Edmond MASH (E-MASH).[1]   MASH is located on the ground floor of KRMC and is an "eligibility" company dedicated to matching uninsured patients with public government benefits programs, such as Medicaid, to help them pay their medical bills.

¶9    Around June 1, the parties learned there would be insurance coverage through the Tortfeasor's carrier. MASH claims that when it first learned of Don's condition through

---

[1] Unless otherwise specified, reference to MASH in this Opinion will mean MASH and E-MASH.

KRMC, before meeting with Kathryn, it determined Don was not eligible for Medicaid because the Tortfeasor had automobile insurance that would pay Don's medical bills. Nonetheless, it provided Medicaid application forms to Kathryn in the event insurance was not available or failed to provide full coverage. Kathryn completed and submitted the forms, without further assistance from MASH, and MASH closed its file on Don.

¶10 On June 14, 2006, Kathryn signed a KRMC-provided Patient Service Agreement (PSA or Agreement) as guarantor for Don's medical bills. This Agreement included various alternative statements and the signer was required to mark the applicable statement and sign the document. For example, the PSA required the signer to indicate whether the bill would be paid in cash, by credit card, insurance, or through Medicaid or Medicare. On this PSA, the statement instructing KRMC to bill "applicable insurance" was marked, and the statement indicating the patient was covered by Medicaid was not marked. Although Kathryn signed the document, she claimed the "applicable insurance" statement had been marked by someone else before the document was presented to her for signature. Less than one week later, Kathryn was notified by Medicaid that Don was eligible for Medicaid coverage retroactively to the date of the accident.

¶11 The PSA also provided, among other things,

> [Guarantor], in consideration of the services to be rendered, agrees to pay patient's hospital account regardless of the existence of insurance or other third party liability. Kalispell Regional Medical Center . . . is free to declare the entire balance to be immediately due and payable if the undersigned guarantor(s) fail to make any scheduled payment when due. The undersigned further agrees to pay all costs of collection, including reasonable attorney's fees, if the account is not timely paid.

5

¶12 Despite Don being eligible for Medicaid and Medicaid's apparent willingness to pay $56,998.49 of the total KRMC bill, KRMC billed the Estate seeking full payment for its services from the insurance settlement funds to be paid to the Estate. On July 13, 2006, KRMC filed a Notice of Lien in the amount of $154,839.38 with the Tortfeasor's insurer and the Estate's lawyers. On July 15, 2006, Don was transferred to a healthcare facility in Missoula, Montana. On July 24, 2006, KRMC filed a second Notice of Lien with the same parties in the amount of $73,145.13.

¶13 In early April 2007, CIC and Safeco settled Don's claims with Kathryn. The terms of this settlement were confidential and filed under seal. Some of the funds were paid to the Estate's lawyers and some were deposited into a special needs trust to cover a portion of the cost of Don's needs for the remainder of his life. On May 10, 2007, the Estate filed the complaint against KRMC, alleging the multiple counts noted in ¶ 1. On July 23, 2007, KRMC filed its answer and counterclaim, as well as a third party complaint against the two insurance companies, CIC and Safeco. In July 2007, the Estate moved, with KRMC's consent, to submit the principal amount of medical expenses in dispute, not including attorney fees and interest, for deposit with the District Court. As a result, the Estate deposited $227,984.51 with the clerk of the District Court on July 25, 2007. The District Court deposited this amount into an interest-bearing account. On March 10, 2008, KRMC filed a motion for summary judgment.

¶14 The Estate filed an Amended Complaint in October 2008, naming MASH as a defendant. Also in October 2008, the District Court granted summary judgment to the insurance companies and they were dismissed from the case. In October 2009, MASH

6

moved for summary judgment. In May 2010, after extensive discovery, the court granted both KRMC and MASH's motions for summary judgment. KRMC was allowed to recover its lien in the amount of $227,984.51 plus prejudgment interest at 10% per annum from July 24, 2006 (the date of KRMC's final notice of lien). The court determined the Estate's claims against MASH were without merit. In a subsequent order, the District Court awarded KRMC attorney fees and costs in the amount of $66,826.66. In October 2010, KRMC received the principal amount of the judgment plus interest accrued in the interest-bearing account, but the attorney fees, costs, and any additional interest claimed by KRMC remain unpaid.

¶15 The Estate appeals. We affirm and remand.

## STANDARD OF REVIEW

¶16 On appeal from a district court's grant of summary judgment, our standard of review is de novo, and we apply the criteria set forth in M. R. Civ. P. 56. Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Walters v. Flathead Concrete Prods.*, 2011 MT 45, ¶ 8, 359 Mont. 346, 249 P.3d 913 (citations omitted).

¶17 A district court's interpretation and application of a statute is a conclusion of law. We review a district court's conclusion of law to determine whether those conclusions are correct. *Hulstine v. Lennox Indus.*, 2010 MT 180, ¶ 16, 357 Mont. 228, 237 P.3d 1277 (citations omitted).

7

¶18 An award of attorney fees is reviewed for an abuse of discretion. *DiMarzio v. Crazy Mt. Constr., Inc.*, 2010 MT 231, ¶ 21, 358 Mont. 119, 243 P.3d 718 (citation omitted).

## DISCUSSION

¶19 *Did the District Court err in granting summary judgment to KRMC and MASH?*

¶20 In its Amended Complaint, the Estate alleged KRMC committed breach of contract for the benefit of a third party. This argument was based upon KRMC's participation in the Montana Medicaid program as a contractual service provider. By executing a contract with the Medicaid program, argued the Estate, KRMC agreed to accept the reasonable billing rates established by Montana Medicaid for patients determined to be eligible by Montana Medicaid for Medicaid benefits. As Don was found to be a Medicaid-eligible patient, the Estate urged, Don was an intended third party beneficiary of the service provider agreement between KRMC and the Montana Medicaid program. The Estate asserted that KRMC breached that agreement when it billed the Estate directly and attempted to collect from the Estate an amount in excess of the Medicaid-determined amount of $56,998.49. In other words, the Estate maintained that once Medicaid agreed to provide payment of a portion of Don's medical expenses, KRMC was obligated to accept that amount in full payment of Don's hospital bill and was foreclosed from seeking additional sums for medical expenses from the Estate. Thus, it was not entitled to assert liens against the Estate.

¶21 The Estate set forth a myriad of claims against KRMC and MASH, alleging they breached implied covenants of fair dealing; breached their fiduciary duty of loyalty,

honesty, fidelity and heightened care to the Estate; violated the Montana Unfair Trade Practices and Consumer Protection Act; and breached the implied covenant to accept Medicaid benefits. All claims, however, stem from KRMC's insistence on billing the Estate for full payment of Don's care rather than accepting the much-reduced Medicaid-established amount. As a result, the District Court was required to determine whether KRMC had the legal right to bill the Estate for the full amount of KRMC's bill.

¶22 In May 2010, the District Court granted KRMC's motion for summary judgment. The court reasoned that the PSA instructed KRMC to bill insurance. Additionally, the Medicaid statutes and regulations required KRMC to bill third party insurance if such insurance was available. The District Court also held that the liens were appropriately filed, the parties were duly notified, and the insurance companies paid funds to the Estate in an amount adequate to satisfy the liens. The court finally determined that no questions of material fact vis-à-vis the Medical Center's liens and its rejection of Medicaid existed.

¶23 The Estate maintains on appeal that KRMC employed unfair and deceptive business practices, acted for its own financial gain, and misled Kathryn into believing it would accept Medicaid payments in lieu of payments from any other source. The Estate also asserts that the PSA is an invalid contract because Kathryn was under duress and undue influence when she signed it. The Estate further argues that the validity of the contract presents material questions of fact not subject to resolution by summary judgment.

¶24 Section 53-6-101(1), MCA, states, in relevant part:

9

There is a Montana medicaid program established for the purpose of providing necessary medical services to eligible persons who have need for medical assistance. The Montana medicaid program is a joint federal-state program administered under this chapter and in accordance with Title XIX of the Social Security Act, 42 U.S.C. 1396, et seq. The department [of health and human services] shall administer the Montana medicaid program.

¶25 The Department of Health and Human Services (the Department) adopted extensive regulations to implement Montana's Medicaid program. Admin. R. M. 37.85.407(1) establishes that, with the exception of certain circumstances inapplicable to the case before us, "No payment shall be made by the department for any medical service for which there is a known third party who has a legal liability to pay for that medical service . . . ." Admin. R. M. 37.85.407(2) defines a third party as "an individual, institution, corporation, or public or private agency that is or may be liable to pay all or part of the cost of medical treatment and medical-related services for personal injury . . . and includes but is not limited to insurers . . . and parties liable or who may be liable in tort."

¶26 The regulations also direct that "If a provider learns of the existence of a known third party, that provider shall bill the third party prior to billing the department." Admin. R. M. 37.85.407(5). Admin. R. M. 37.85.407(11) allows a medical provider to file a medical lien against a potentially liable third party tortfeasor.

¶27 These rules clearly establish that KRMC was legally obligated to bill the third party insurers in this case rather than Montana Medicaid, and that it was entitled to file a medical lien to collect the amounts owed. It is axiomatic that "Medicaid is designed to be the payer of last resort, available only when no other source is liable for the expense."

*Blanton v. Dep't of Pub. HHS*, 2011 MT 110, ¶ 49, 360 Mont. 396, ___ P.3d ___. *See Ark. HHS v. Ahlborn*, 547 U.S. 268, 291, 126 S. Ct. 1752, 1767 (2006) ("The Board properly observed that Congress, in crafting the Medicaid legislation, intended that Medicaid be a 'payer of last resort.' "); *State v. Valley Hosp. Ass'n, Inc.*, 116 P.3d 580, 582 (Alaska 2005) ("Medicaid, as a payer of last resort, only reimburses Medicaid providers absent other sources of payment, such as insurance or liable third parties."); *Agency for Health Care Admin. v. Associated Indus.*, 678 So. 2d 1239, 1249 (Fla. 1996) ("The intent of the statute is clear that 'Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients,' and that, 'if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources.' ").

¶28   In the case before us, KRMC, MASH and the Estate all knew of the existence of third party insurance coverage shortly after Don was injured.  KRMC was therefore mandated to seek payment for its services from the third party tortfeasor or other applicable insurance coverage.  This would be true whether Kathryn executed the PSA or not.  The Estate has failed to present to this Court any material questions of fact pertaining to KRMC's legal right to seek payment for services from third party insurance coverage rather than Medicaid.  For this reason, the District Court's grant of summary judgment in favor of KRMC on its counterclaim was not error.

¶29   The Estate also alleges that MASH breached an implied covenant of fair dealing, breached a fiduciary duty, and violated the Unfair Trade Practices and Consumer Protection Act.  These claims are without merit.  The Estate's accusations that MASH

11

failed to "advocate" for Don in a manner the Estate found satisfactory does not create a legal claim for breach of a covenant of fair dealing or breach of a fiduciary duty. In reality, Kathryn had one conversation with a MASH employee at which she accepted some forms that she completed and filed on her own. The record is void of any evidence of a contract, special relationship, or partnership between MASH and the Estate. As we noted in *Debcon, Inc. v. City of Glasgow*, 2001 MT 124, ¶ 57, 305 Mont. 391, 28 P.3d 478, "Generally, the tort of bad faith arises only between contracting parties, and is nothing more than an implied term in all contracts—that is, to act in good faith and deal fairly in the performance of the contract."

¶30 As there was no relationship—contractual or otherwise—between the Estate and MASH, there was no duty owed by MASH to the Estate. We have held that whether a fiduciary duty exists is a question of law and may be resolved on summary judgment when no genuine issues of material fact exist. Likewise, whether a "special relationship" exists such as would give rise to a fiduciary duty is also a question of law, not fact, "for the relationship and the duty are two sides of the same coin." *First Sec. Bank v. Kyle Abel and Abel Enters.*, 2008 MT 161, ¶ 32, 343 Mont. 313, 184 P.3d 318.

¶31 Lastly, there is no support for the Estate's accusation that MASH violated the Montana Unfair Trade Practices and Consumer Protection Act. Neither the Estate, nor the Donalds personally, were clients of MASH. There is simply no relationship between the Estate and MASH that would support a claim under the Unfair Trade Practices and Consumer Protection Act. Again, the Estate has failed to meet its burden of establishing

12

the presence of material questions of fact vis-à-vis MASH. Summary judgment for MASH was appropriate.

¶32 *Did the District Court incorrectly interpret and apply the Montana Medicaid Act?*

¶33 As discussed above, the Montana Medicaid Act, which was adopted within the framework of federal Medicaid law, was correctly interpreted and applied by the District Court.

¶34 *Did the District Court incorrectly award prejudgment interest to KRMC?*

¶35 A party's right to prejudgment interest arises from § 27-1-211, MCA, which provides:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

¶36 Additionally, § 27-1-312, MCA, provides:

> The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon.

In Montana, the legal interest rate is 10% per year. Section 31-1-106, MCA.

¶37 Following the court's Order and Judgment issued on July 6, 2010, KRMC requested disbursement of the funds that had been placed with the District Court in July 2007. On October 12, 2010, the District Court clerk issued a check to KRMC in the amount of $242,602.58. This amount represents the $227,984.51 principal owed, together with $14,618.07 in interest earned between July 25, 2007 (the date the Mountain West Bank account for this case was established) and October 12, 2010.

¶38 The Estate argues that because the Medical Center agreed to have the funds placed in an interest-bearing account while the parties disputed whether full payment or Medicaid payment was appropriate, the Medical Center should receive only the interest that accrued in that interest-bearing account and no more. The Medical Center counters that § 27-1-211, MCA, is not a "discretionary" statute and that it mandates "interest as long as the legal situation fits within the broad guidelines of the statute." KRMC argues that the three statutory criteria for an award of prejudgment interest are met in this case. It asserts it is entitled to the full amount of statutory interest because it did not have access to the funds the Estate should have rightfully paid it in 2006 until it received them in October 2010, and that it cannot be fully compensated without payment of the statutorily-allowed interest.

¶39 The District Court held that KRMC should recover the full principal amount of its lien plus prejudgment interest thereon at 10% per annum from July 24, 2006. In this regard, the court correctly interpreted and applied § 27-1-211, MCA. However, we conclude KRMC should not receive the interest earned in the Mountain West Bank account *plus* 10% annual interest. As argued by the Medical Center, the intent of the interest statute is to compensate the wronged party for the loss of the use of its money. *Byrne v. Terry*, 228 Mont. 387, 391, 741 P.2d 1341, 1343 (1987); *see also Concrete Sys, Inc. v. Pavestone Co., L.P.*, 112 Fed. Appx. 67 (1st Cir. 2004). It is not intended to provide a "windfall." For this reason, we remand this matter to the District Court with instruction to determine the dollar value of 10% interest on $227,984.51 from July 24, 2006, until October 12, 2010. The court must then reduce this amount by the amount of

14

interest KRMC received from the interest-bearing account, with the Estate to pay the remaining interest due.

¶40 *Did the District Court abuse its discretion in awarding attorney fees?*

¶41 As indicated above, the terms of the Patient Service Agreement provided that KRMC could collect its attorney fees and costs in the event it had to pursue collection from the Estate. It was under this contract the District Court awarded fees and costs to KRMC in its Order and Judgment on July 6, 2010. The court instructed KRMC to submit an affidavit of fees and a memorandum of costs. KRMC did so and the Estate moved for a hearing, which the District Court conducted on October 4. During the hearing, KRMC indicated that the fees requested did not include time spent on KRMC's third party complaint against the insurers, but did include time spent addressing the Estate's claims against it. The District Court awarded $64,014 in fees and $2,812.66 in costs. The Estate claims the court erred for the following reasons.

¶42 First, the Estate acknowledges that KRMC's counterclaim raised a claim for the value of the services KRMC provided to Don. The Estate, however, asserts this is insufficient to justify an award of attorney fees and costs under the Patient Service Agreement. The Estate relies on § 28-3-704, MCA, which provides:

> Whenever, by virtue of the provisions of any contract . . . one party to the contract . . . has an express right to recover attorney fees from any other party to the contract . . . in the event the party having that right brings an action upon the contract . . . then in any action on the contract . . . all parties to the contract . . . are considered to have the same right to recover attorney fees . . . .

The Estate opines that KRMC failed to expressly argue the PSA in its counterclaim and, therefore, has not brought "an action upon the contract." As a result, it cannot be awarded attorney fees and costs under the contract.

¶43 The Estate, however, failed to raise this argument in the District Court despite ample opportunities to do so. While KRMC's counterclaim did not specifically reference the PSA, it nonetheless requested attorney fees and costs. The Estate did not dispute KRMC's request for fees and costs when it replied to the counterclaim. Subsequently, in March 2008, when KRMC filed a Motion for Summary Judgment in which it expressly requested attorney fees based on the PSA, the Estate did not argue that the PSA was not properly before the court. Additionally, the District Court allowed discovery and additional briefing before ruling on the Medical Center's summary judgment motion. During supplemental briefing, the Estate failed again to argue KRMC did not raise the contract in its counterclaim. Lastly, the District Court held a summary judgment hearing and the Estate did not assert the contract was not properly before the court.

¶44 We have repeatedly held that we will not review arguments presented for the first time on appeal. *Hilliard v. Smith (In re Parenting of N.S.)*, 2011 MT 98, ¶ 36, 360 Mont. 288, ___ P.3d ___. We will not put a trial court in error on an issue raised by a party on appeal where the court was not given the opportunity to address the issue. *Yecovenko v. State,* 2007 MT 338, ¶ 14, 340 Mont. 251, 173 P.3d 684.

¶45 The Estate argues in the alternative that the District Court erred in awarding KRMC legal fees under the PSA because the vast majority of KRMC's fees were generated defending KRMC against the Estate's claims, and NOT toward KRMC's

collection efforts. Rejecting this argument, the District Court observed in its Order that "In order to collect under the Patient Services Agreement, KRMC had to defend [the Estate's] allegations and counterclaim against [the Estate] for the amount owing under the Patient Services Agreement." As such, each of the Estate's claims was "inextricably intertwined with [KRMC's] collection of the amount due to it. In order for [KRMC] to collect the amount of its debt, it needed to defeat [the Estate's] claims . . . . Thus, [KRMC's] collection involved defeating the claims made by [the Estate]." *See Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶ 79, 345 Mont. 125, 191 P.3d 374 ("[A]n attorney may be entitled to an entire fee where it is impossible to segregate the attorney's time between claims entitling the party to attorney fees and other claims."). The court continued that the "evidence and theories involved in asserting KRMC's right to collect the amount owing under the Patient Services Agreement are the same as those involved in defending [the Estate's] claims that challenged KRMC's right to collect the amount owing . . . ."

¶46 We agree that KRMC's defense against the claims asserted by the Estate cannot be separated from its legal efforts to collect the monies due; therefore, the District Court did not abuse its discretion by awarding KRMC its reasonable attorney fees and costs.

¶47 Lastly, KRMC requests attorney fees on appeal. We have recently held that "[w]hen entitlement to costs and attorney fees arises from contract, that entitlement includes costs and attorney fees on appeal." *Gibson v. Paramount Homes, LLC*, 2011 MT 112, ¶ 21, 360 Mont. 421, ___ P.3d ___. The rationale in *Gibson* applies to the case before us.

## CONCLUSION

¶48 For the foregoing reasons, we affirm the District Court and remand for further proceedings. The District Court is instructed to offset the prejudgment interest award by the amount of interest KRMC received from the interest-bearing account. Additionally, the District Court shall make a determination of KRMC's fees and costs of appeal for payment by the Estate.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS