

DA 12-0613

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 255

IN THE MATTER OF:

N.A.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. DDI 2012-61
                Honorable James P. Reynolds, Presiding Judge

      COUNSEL OF RECORD:

          For Appellant:

          Jeanne M. Walker; Hagen & Walker, PLLC; Billings, Montana

          For Appellee:

          Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
          Attorney General; Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney; Helena, Montana

                       Submitted on Briefs:  June 19, 2013

                                Decided:   September 10, 2013

      Filed:

                          _____
                                      Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Respondent and appellant N.A. was committed to Montana State Hospital for 90 days by a District Court order.  N.A. now appeals this order.  We affirm.

## STATEMENT OF THE ISSUES

¶2     The issues on appeal are as follows:

¶3     *Did N.A.'s participation in his own defense reduce his attorney to mere "standby counsel" in violation of § 53-21-119, MCA?*

¶4     *Was N.A. deprived of procedural due process when a professional evaluator failed to submit a written report to the District Court and both parties?*

¶5     *Did the District Court correctly deny N.A.'s untimely motion for a jury trial?*

¶6     *Did the District Court abuse its discretion by denying N.A. a continuance?*

¶7     *Was N.A.'s counsel ineffective?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     Respondent N.A. has been diagnosed with paranoid schizophrenia.  After some treatment at the Phoenix House, professionals there became concerned that he was a danger to himself and others.  The State instituted an involuntary civil commitment proceeding.  At his initial appearance, N.A. was informed of his right to a jury trial and the subsequent hearing that would occur, which would include a prehearing mental health evaluation.  N.A. informed the District Court that he did not want evaluation by professionals who had evaluated him in the past because he believed them to be guilty of perjury.  N.A. informed the court that he needed more time to find and choose an evaluator.

¶9 N.A. could not provide the name of his professional of choice, and found both the State and public defender evaluators not to his liking. The court gave N.A. a one-day continuance to obtain his chosen professional, but he failed to provide a name to his attorney in time for her to contact the evaluator. When the commitment proceeding resumed, the District Court found that N.A. had been given a reasonable choice of evaluator, and denied N.A.'s motion for continuance. After the State had finished presenting its case, N.A. moved for a jury trial, which the court rejected as untimely.

¶10 Throughout the commitment hearing, N.A. had an unusual level of participation in his defense. N.A. performed the overwhelming majority of cross examinations, and delivered his own closing. N.A.'s attorney, Ms. Teal Mittelstadt (Mittelstadt), assisted in cross examination, conducted direct examination of N.A., and addressed the District Court concerning matters of legal significance.

¶11 After a full hearing and upon a finding that N.A. was a danger to himself, the District Court committed N.A. to the Montana State Hospital for a period of 90 days. N.A. now appeals that order.

## STANDARD OF REVIEW

¶12 We review orders in civil commitment proceedings to determine whether findings of fact are clearly erroneous and conclusions of law are correct. *In re L.K.-S.,* 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100. Issues of right to counsel in commitment proceedings are subject to plenary review. *In re K.G.F.,* 2001 MT 140, ¶ 17, 306 Mont. 1, 29 P.3d 485. We may review involuntary commitment proceedings for plain error, regardless of whether an objection was made at trial. *In re J.D.L.,* 2008 MT 445,

¶¶ 6-7, 348 Mont. 1, 199 P.3d 805.  This Court reviews a district court's interpretation and application of a statute to determine whether its conclusions of law are correct. *Estate of Donald v. Kalispell Medical Ctr.,* 2011 MT 166, ¶ 17, 361 Mont. 179, 258 P.3d 395.  Claims of ineffective assistance of counsel present mixed issues of law and fact which we review de novo.  *State v. Clary,* 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88.

### DISCUSSION

¶13    *Did N.A.'s participation in his own defense reduce his attorney to mere "standby counsel" in violation of § 53-21-119, MCA?*

¶14    N.A.'s primary argument is that his participation in the hearing made him essentially pro se, constituting a waiver of his right to counsel in violation of § 53-21-119(1), MCA.  Although he had an attorney present, N.A. contends that his lawyer's role was as standby counsel, which does not constitute "counsel" for the purposes of effective representation.

¶15    This Court has recognized the Sixth Amendment right to self-representation, but we are also mindful of the disadvantages confronting pro se parties.  *Halley v. State,* 2008 MT 193, ¶ 20, 344 Mont. 37, 186 P.3d 859.  These disadvantages are especially concerning in criminal and civil commitment proceedings, where the State seeks to deprive an individual of their physical freedom.  With this risk in mind, our Legislature expressly prohibited waiver of the right to counsel in civil commitment proceedings. Section 53-21-119, MCA.  In regard to what constitutes "counsel," this Court has held that "standby" counsel do not qualify as counsel for the purposes of the Sixth

4

Amendment. *Halley*, ¶ 22 (quoting *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991).

¶16    Yet, not all client participation transforms effective counsel into standby counsel. A defendant's lawyer is reduced to standby counsel when she cannot (1) substantially interfere with significant tactical decisions, (2) control the examination of witnesses, (3) speak on matters of legal importance to the defendant, and/or (4) bear responsibility for defendant's defense. *Halley,* ¶ 22.

¶17    Here, N.A. had an unusual level of participation in his own civil commitment proceeding, but his participation did not reduce his attorney to mere standby counsel. N.A.'s attorney, Mittelstadt, exercised control over all parts of the proceeding, including the questioning phase. Mittelstadt filed an untimely motion for jury trial and addressed the District Court in the legal discussion of this motion. Mittelstadt also made motions for a continuance during both days of the proceeding and addressed the court on this issue, at one point even calling for the commitment hearing to recess so that she could confer with her client. Mittelstadt conducted direct examination of N.A. and intervened during N.A.'s cross-examinations to ask legally significant questions. When N.A. wished to ask questions of a witness or to address the court in closing, he asked Mittelstadt. In light of these facts, Mittelstadt had direct control over N.A.'s trial tactics, she had supervisory control over the questioning of witnesses, and she had direct exchanges with the court on matters of legal significance to N.A.'s case. This level of responsibility and control demonstrates that Mittelstadt was not merely an "observer . . . who does not speak for the defendant." *Taylor,* 933 F.2d at 313.

5

¶18　Finally, N.A. argues that the District Court recognized him as pro se on several occasions. Indeed, the court told N.A. that "you are in effect representing yourself" and identified Mittelstadt as co-counsel. When Mittelstadt asked for clarification on what role N.A. should assume, the court replied that "I don't have a problem with it either way. It can go either way." But the District Court's designations and indifferences are not dispositive in determining whether Mittelstadt was standby counsel. Rather, we consider the actual nature of Mittelstadt's control over N.A.'s defense, which was more supervisory than standby.

¶19　*Was N.A. deprived of procedural due process when a professional evaluator failed to submit a written report to the District Court and both parties?*

¶20　N.A. next argues that his procedural due process rights were violated when Kim Waples (Waples) failed to file a written report with the court on her findings as to N.A.'s mental health. N.A. raises this issue for the first time on appeal.

¶21　While this Court will generally not hear issues raised for the first time on appeal, we may review involuntary commitment proceedings for plain error, regardless of whether an objection was made at trial. *J.D.L.*, ¶¶ 6-7. Plain error exists when an error (1) implicates a fundamental right, and (2) leaves one firmly convinced that some aspect of the trial would result in manifest miscarriage of justice, call into question the fairness of the trial or proceeding, or compromise the integrity of the judicial process. *State v. Taylor*, 2010 MT 94, ¶¶ 14-17, 356 Mont. 167, 231 P.3d 79.

¶22　Section 53-21-123, MCA, provides that respondents in civil commitment proceedings must have a mental health examination conducted by a professional person

after the initial hearing, and that person must file a written report of the examination to the court with copies to both parties. Montana's civil commitment laws are to be strictly adhered to. *In re T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, 41 P.3d 323. These procedures are necessary to guard against the calamitous effect that involuntary commitment can have in depriving a person of liberty. *In re Shennum*, 210 Mont. 442, 450-51, 684 P.2d 1073, 1078 (1984).

¶23   However, not all errors of state law amount to deprivation of procedural due process; rather, we employ a flexible balancing test to determine whether a particular safeguard is required in a specific circumstance. *Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S. Ct. 1558, 1568 (1982); *Matthews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 902-03 (1976). In civil commitment proceedings, this Court examines procedural due process by weighing the risk of depriving an individual's liberty against the probable value of the procedure in question. *In re E.T.,* 2008 MT 299 ¶¶ 27-29, 37, 345 Mont. 497, 191 P.3d 470. When foregoing a procedure does not cause substantial prejudice to a party, the error is *de minimus* and does not affect an individual's liberty interest. *In re O.R.B.,* 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482.

¶24   In *O.R.B.*, this Court found a written report's lack of recommendations did not prejudice the respondent because all parties were effectively put on notice of the recommendations. *O.R.B.*, ¶ 31. Here, even if Waples' report violated the statute because she did not file it with the District Court, all parties had effective and sufficient notice of Waples' findings. Waples produced a report and relied on it at trial, giving the court ample opportunity to hear her findings and conclusions about N.A.'s mental health.

7

The fact that the District Court heard this in the form of testimony instead of in written report does not risk N.A.'s fundamental right to due process. Second, N.A.'s attorney retained an additional evaluator, Dr. Bowman Smelko (Smelko), who attended and participated in the Waples examination. Smelko informed N.A.'s attorney that he would not testify at trial because his findings and recommendations did not differ from Waples' report. Like the appellant in *O.R.B.*, N.A. claims that he could not prepare effectively, but was confronted with sufficient evidence to put him on notice of his evaluator's testimony.

¶25 As such, Waples' failure to file the report did not implicate N.A.'s procedural due process rights under *Matthews* and *E.T.* While we recognize the possibility for this to constitute prejudicial error in other circumstances, it does not amount to plain error in this instance.

¶26 *Did the District Court correctly deny N.A.'s untimely motion for a jury trial?*

¶27 N.A. next argues that his right to a jury trial was violated when his attorney failed to make a timely demand before the hearing date. N.A. contends that he informed his previous public defender that he wanted a jury trial, and that his failure to demand a trial was due to a combination of his previous lawyer's inaction and his own ignorance of the law.

¶28 We review a district court's interpretation and application of a statute to determine whether its conclusions of law are correct. *Estate of Donald,* ¶ 17. Section 53-21-125, MCA, provides that respondents may request a jury trial at any time before the commitment hearing.

8

¶29 N.A. had ample opportunity and notice to inform the court and his lawyer of this desire before the hearing. N.A. was advised of this right at his initial appearance on September 10, and made no demand, nor did he mention his desire for a jury during the first day of the commitment proceeding when he began to actively participate in his own defense. N.A. first notified Mittelstadt that he desired a jury trial on September 12, after the State had completed its case. While nothing in the record establishes that N.A. actually made this request to his original attorney, even if he had, N.A. had sufficient notice and opportunity to raise such a motion after he changed counsel. Thus, the District Court correctly concluded that his demand was untimely under the statute.

¶30 *Did the District Court abuse its discretion by denying N.A.'s motion for continuance?*

¶31 This Court reviews a district court's interpretation and application of a statute to determine whether its conclusions of law are correct. *Estate of Donald*, ¶ 17.

¶32 Section 53-21-118, MCA, provides that a respondent may secure a professional person of their choosing to examine and testify to their mental health. A district court must allow the respondent a reasonable choice of an available professional person "[w]henever possible." Section 53-21-118(2), MCA. We note that this statute only contemplates "reasonable choice of an available professional person," and does not safeguard the demand for a more favorable but nameless professional. Additionally,

district courts are not bound to continually delay a hearing due to a respondent's indecision concerning his evaluator.

¶33 Here, the District Court gave N.A. reasonable time and opportunity to secure the evaluator of his choice. N.A. objected that he did not want to be evaluated by certain professionals at his initial hearing on September 10, because he believed them to be guilty of various crimes. N.A.'s attorney secured an independent evaluator through the Office of the Public Defender, Dr. Smelko, in addition to the State's evaluator, Waples. N.A. told his attorney at the evaluation that he wanted neither Smelko nor Waples, but could not give his attorney the name of his preferred evaluator. N.A. also had difficulty identifying his preferred evaluator to the District Court on September 11, but eventually asserted that he wanted "Dr. Smith" because he wanted an evaluator who was "specifically favorable for me."

¶34 The District Court granted a continuance until September 13 so that N.A. or his attorney could contact an evaluator. However, N.A. told Mittelstadt of his actual choice late the next day, and she was unable to contact the chosen evaluator before the continuation of the hearing. By this point, the District Court had already given N.A. and his counsel three days to choose and secure a favorable evaluator. The District Court properly concluded that N.A. had been afforded a "reasonable choice" of evaluator, and was not bound to continually delay the hearing due to N.A.'s indecision or inability to obtain favorable evaluation.

¶35 *Was N.A.'s counsel ineffective?*

¶36 As a final matter, N.A. argues that his counsel was ineffective for allowing him to participate in his trial, for failing to make a timely motion for jury trial, and for failing to obtain the evaluator of his choice. We review claims of ineffective assistance of counsel de novo because they include mixed questions of fact and law. *Clary*, ¶ 13.

¶37 In *K.G.F.*, we examined effective assistance of counsel in civil commitment with five different factors: (1) appointment of competent counsel, (2) counsel's initial investigation, (3) counsel's interview with the client, (4) the presence of counsel during a mental health evaluation, and (5) the role of the counselor as an advocate or adversary. *K.G.F.*, ¶¶ 71-89. It is unclear whether a challenge based on only one of these five critical areas would meet *K.G.F.*'s threshold "substantial showing of evidence . . . that counsel did not effectively represent the respondent's interests." *In re C.R.C.,* 2009 MT 125, ¶ 19, 350 Mont. 211, 207 P.3d 289 (quoting *K.G.F.*, ¶ 86).

¶38 N.A.'s complaints about his counsel's assistance address only the fifth critical area, and even these complaints fail to raise a substantial showing of ineffectiveness. Mittelstadt was not an ineffective attorney for simply allowing N.A. to participate in the proceeding, and in fact, she intervened several times to make motions and ask questions. Although cross-examination and closing would probably have been more effective had Mittelstadt conducted them exclusively, N.A. has not demonstrated that his lawyer was ineffective for allowing him to participate in his defense. Second, the record establishes that Mittelstadt did not know of N.A.'s desire for a jury trial until September 12, after the State had concluded its case. Thus her untimely motion was not due to her own ineffectiveness. Third, Mittelstadt's failure to obtain N.A.'s preferred evaluator was the

11

result of N.A.'s inability to provide the name of his preference, which he finally provided late the day before the hearing resumed. As such, N.A.'s complaints amount to ineffective use of counsel rather than ineffective assistance of counsel.

## CONCLUSION

¶39 N.A.'s participation at trial did not violate § 53-21-119, MCA. The failure to file a professional report with the court was not sufficiently prejudicial to warrant procedural due process relief. The District Court properly denied N.A.'s motions for continuance and for a jury trial.

¶40 Finally, N.A.'s claims of ineffective assistance of counsel are not supported by sufficient evidence that he was prejudiced by his attorney's actions.

¶41 We affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE