No. 80-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN THE MATTER OF N.B.

---

Appeal from:   District Court of the Thirteenth Judicial
               District,
               In and for the County of Yellowstone.
               Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

        James D. Johnson, Montana Legal Services, argued, Warm
          Springs, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Sheri Sprigg argued, Assistant Attorney General,
          Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana

---

                           Submitted:  November 21, 1980

                           Decided:   DEC 24 1980

Filed:  DEC 24 1980


_____
Thomas J. Kearney
                          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

N.B. appeals from an order of the Thirteenth Judicial District Court, Yellowstone County. After a nonjury hearing, the District Court made a finding that N.B. was seriously mentally ill. He was involuntarily committed to Warm Springs State Hospital for three months of evaluation and treatment. This appeal raises the following issues for our consideration:

1. Did the District Court commit error in its findings by using "reasonable medical certainty" as the legal standard of persuasion necessary to find N.B. seriously mentally ill?

2. Does the clause "except that mental disorders shall be evidenced to a reasonable medical certainty" found in section 53-21-126(2), MCA, lower the legal standard of persuasion required in civil commitment proceedings below the "clear and convincing" standard required by Fourteenth Amendment due process?

3. Can this Court consider these issues where N.B.'s commitment may be moot, and where the issues were not raised in the District Court?

We hold that these issues are properly before us. Although we believe the statutory legal standard for proving serious mental illness is constitutional, we reverse and dismiss the order of the District Court. The District Court erred by using the standard for judging the competence of a medical witness' testimony in place of the required legal standard of persuasion for determining whether N.B. was seriously mentally ill. The meager evidentiary record developed in this case does not support a remand of this case to the District Court. N.B. is not shown in the record

before us to be seriously mentally ill by the required legal standard of persuasion of clear and convincing proof.

On December 5, 1979, Scott Schreiber, a counselor-therapist of the South Central Montana Regional Mental Health Center, requested the Yellowstone County Attorney to file a petition alleging N.B. to be seriously mentally ill and dangerous. Schreiber requested that N.B. be committed to a state mental hospital. A formal petition for N.B.'s commitment was filed that same day. From information included in the petition, the District Court determined that probable cause existed to believe that N.B. was seriously mentally ill. The court ordered that N.B. undergo a psychological examination administered by a professional of the South Central Montana Regional Mental Health Center. Apparently to satisfy this order, Schreiber visited with N.B. for 30 minutes and sent a letter to the county attorney's office indicating that N.B. was "unmanageable on an outpatient basis" and "in need of long-term treatment." In this letter, Schreiber recommended that N.B. be committed to the Warm Springs State Hospital for a period of three months.

An in-chambers hearing was held on December 11, 1979, regarding the petition for commitment. N.B. was present at the hearing and was represented by counsel. The only witness to testify in favor of N.B.'s commitment was Schreiber. Schreiber indicated that he was qualified to testify as a "professional person" in the treatment of the mentally ill. Schreiber testified that he believed N.B. was a danger to himself and to others and that N.B. was seriously mentally ill. In cross-examination, Schreiber admitted that he did not have a degree in psychology and that his commitment recommendation was based in part on

events not personally known by him. Schreiber further admitted that N.B.'s behavior improved while N.B. was taking tranquilizing medication. In his own defense, N.B. testified that his erratic behavior can be controlled by medication. He testified that his recent erratic behaviour occurred after he "ran out" of medication.

In the absence of the presiding judge from chambers, another district judge signed a statement of findings and order for N.B.'s involuntary commitment. Finding of fact no. 7 made by the court read as follows: "The Respondent (N.B.) is to a reasonable medical certainty seriously mentally ill as defined in Section 53-21-102(14) Montana Code Annotated, 1979." (Emphasis added.) N.B. was then involuntarily committed to the Warm Springs Mental Health facility for three months. By the time this appeal was submitted to this Court, N.B. had been released from the facility.

Two cardinal rules of this Court provide that we will not render an opinion concerning an issue that is moot and that a party may not raise an issue for the first time on appeal to this Court. Counsel for N.B. fears we may classify the issues he raises as moot because of N.B.'s release from the Warm Springs facility. Counsel for the State, as respondent in this appeal, argues that the issues raised by N.B. should be dismissed because N.B. failed to raise them during the District Court hearing. Although the State acknowledges that the District Court erred in its finding of fact no. 7, it contends that N.B. should first return to the District Court and move that court to correct its findings and enter a new order.

The important constitutional questions presented here are not rendered moot by N.B.'s release from the Warm

Springs mental health facility. During oral argument, we were informed by counsel that approximately 100 Montanans each year are involuntarily committed for three months of treatment and evaluation in the Warm Springs facility. The timely appeal of an order of involuntarily commitment by any of these persons before release is virtually impossible given our rules of appellate procedure. The constitutional problem presented in this appeal then "could be capable of repetition, yet could evade review." See, Roe v. Wade (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. This Court reserves to itself the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law. We reject the State's argument that this appeal should be dismissed for failure to raise these issues for the first time on appeal if the alleged District Court error affects the substantial rights of a litigant. See, Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169.

The substantial right claimed to have been harmed is N.B.'s right to not be committed to a state mental hospital without clear and convincing proof that he is seriously mentally ill. Addington v. Texas (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323. In Addington, the United States Supreme Court held that due process requires a standard of clear and convincing proof of dangerous mental illness in involuntary commitment proceedings. The Court concluded that proof by mere preponderance of the evidence falls short of meeting the demands of due process, while the stringent standard of proof beyond a reasonable doubt could not constitutionally be required given the subtleties and nuances of mental illness diagnosis. The Court selected the "clear and convincing" standard as the legal burden of

persuasion in these proceedings after balancing the individual's interests in not being involuntarily confined with the State's interests in commiting the mentally disturbed for treatment. The "clear and convincing" standard was chosen because the loss of liberty resulting from involuntary commitment calls for a convincing showing that the individual suffers from dangerous mental illness.

Section 53-21-126(2), MCA, provides Montana's standard of persuasion required in involuntary commitment proceedings:

> "The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty . . ."
> (Emphasis added.)

Counsel for N.B. asserts that section 53-21-126(2), MCA, creates a "trifurcated" legal standard of persuasion: part proof beyond a reasonable doubt, part clear and convincing proof and part proof with reasonable medical certainty. This final part of the statutory standard, he contends, creates an unconstitutionally low standard of persuasion under the rule in Addington. He argues that proof by reasonable medical certainty is less than clear and convincing proof.

We disagree with counsel's interpretation of the statute. We find that Montana's bifurcated standard of persuasion for involuntary commitment is sufficient to pass constitutional scrutiny under Addington. Our statute requires part proof beyond a reasonable doubt and part clear and convincing proof. We interpret the statute's use of "reasonable medical certainty" only as a standard for the medical witness testifying in commitment proceedings. A better statement is that proof of mental disorders to a

reasonable medical certainty is sufficient if, considered with all the other evidence in the case, the trier of fact is led to the conclusion that the mental disorder exists by clear and convincing proof.

Although we find this statute to be constitutional, the legal standard of persuasion it requires was far from satisfied by the evidence produced in N.B.'s commitment proceeding. A "professional person" of unknown expertise was the sole witness produced to prove the mental disorder of N.B. The testimony given by this "professional person" was substantially insufficient with reasonable medical certainty to prove legally that N.B. was seriously mentally ill.

The order of the District Court is reversed. The court erred by using reasonable medical certainty alone as a sufficient standard of proof of serious mental illness. While we find the statute to be constitutional, we dismiss this cause because legally insufficient evidence was presented to prove that N.B. was seriously mentally ill.

Reversed and dismissed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-