FILED

07/19/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0749

DA 14-0749

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 174

IN THE MATTER OF:

C.C.,

          Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DI 14-07
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Chief Appellate Defender, James Reavis, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant
Attorney General, Helena, Montana

                Bernard G. Cassidy, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  June 22, 2016

Decided:  July 19, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     On November 3, 2014, following a dispositional hearing, C.C. was involuntarily committed to the Montana State Hospital for a period of ninety days. She appealed the Nineteenth Judicial District Court's order, arguing it lacked a sufficiently detailed statement of facts to justify her commitment. We vacate, reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In September 2014, the Lincoln County Attorney filed a petition alleging that C.C. suffered from a mental disorder that required commitment. C.C. had been evaluated by a mental health professional with the Western Montana Mental Health Center who requested that the petition be filed. The professional asserted that C.C. posed an imminent danger to herself and to others. The Nineteenth Judicial District Court issued an order finding probable cause and appointing an attorney, a friend for C.C. and a professional person. A Kalispell public defender representing C.C. requested that she be examined by a professional person of her choosing and the court granted the request. Following the requested examination and an initial hearing conducted on October 6, 2014, the District Court concluded that C.C. did not suffer from a mental disease and dismissed the petition.

¶3     On October 18, 2014, Officer Chris Pape of the Troy Police Department was dispatched to C.C.'s residence at approximately 5 a.m. via a 9-1-1 call. Pape spoke with C.C. for several minutes and while her behavior was unusual and she was in possession of a loaded shotgun, he concluded no further action was necessary. Several days later, on October 27, he responded to a call from C.C.'s neighbor, Sunshine Thill, who reported

2

that C.C. was on her front porch at 4:45 a.m. and she felt threatened by C.C.'s odd behavior and frightening statements. Pape arrested C.C. for disorderly conduct. While transporting C.C. to detention, the officer heard her having a conversation with Satan in which C.C. was saying that some unidentified male, presumably Pape, must be killed before C.C. arrived at the jail. C.C. was booked and the officer discovered ammunition in her pockets but no weapons. While in detention, C.C.'s strange behavior caused the staff concern, so they transported her to the emergency room for a mental health evaluation. Several hours later Nancy Huus evaluated her and found her to be calm and functional at the time.

¶4 On October 28, the Lincoln County Attorney's office filed a second petition alleging that C.C. suffered from a mental disorder and required commitment. The District Court conducted an initial hearing on the same day and both Pape and Huus testified. Pape testified that while he found C.C.'s language in the squad car during transport disturbing, C.C. never directly threatened him. Huus testified in some detail that C.C. displayed symptoms of paranoid schizophrenia. She recommended that C.C. be committed to Montana State Hospital for further observation, assessment, and possible treatment by a psychiatrist.

¶5 The District Court conducted an adjudicatory hearing on November 3, 2014. Huus, Pape, Sunshine Thill and C.C. testified. Additionally, Sunshine's sister, Deana Thill, who lives in the same mobile home park as Sunshine and C.C., testified that she was frightened when a confused C.C. entered her home without knocking, thinking she was at a laundry facility. At the conclusion of the hearing, the District Court orally

3

concluded that C.C. needed "to go to Warm Springs" because the Montana State Hospital was "the least restrictive treatment at this point." The court ordered that arrangements be made to keep C.C.'s trailer home safe and winterized while she was at the hospital and to ensure that her bills were properly paid. Following the court's oral pronouncement and before adjournment, the State offered a prepared order which the court signed. The written order included findings of fact, conclusions of law and an order of commitment. As the adequacy of these findings and conclusions are at issue in this appeal, we repeat them in their entirety:

FINDINGS OF FACT

1. Respondent suffers from a mental disorder, Unspecified Schizophrenia Spectrum, as diagnosed by Nancy K. Huus, Mental Health Professional.

2. Because of her mental disorder, Respondent presents an imminent threat of injury to herself and others for the reasons set forth in the testimony and report of Nancy K. Huus, Mental Health Professional.

3. Respondent is a person who requires residential treatment and commitment, and the [c]ourt finds that there are no services available locally which meet Respondent's needs.

4. Respondent is a person who is not competent to make decisions regarding her medication and treatment. Involuntary medication is necessary to protect the Respondent and the public and to facilitate effective treatment.

5. The least restrictive treatment facility available for the Respondent is at the Montana State Hospital at Warm Springs, Montana.

CONCLUSIONS OF LAW

1. Respondent is a person who suffers from a mental disorder within the meaning of § 53-21-102, MCA. Due to this mental disorder, Respondent requires commitment.

4

2. Respondent should be committed to Montana State Hospital at Warm Springs, Montana, for the period of time sufficient to adequately diagnose and treat Respondent's mental illness. This commitment is for a period of ninety (90) days, unless extended by further order of this [c]ourt. The [c]ourt specifically finds that this is the least restrictive treatment alternative necessary to protect Respondent and the public and to permit effective treatment.

3. Respondent needs to receive appropriate medication for her mental disorder while at Montana State Hospital at Warm Springs, Montana. The physicians at the Montana State Hospital shall have full authority to administer medication by injection if necessary as the Respondent is unable to give informed consent.

ORDER OF COMMITMENT

1. That Respondent is committed to the Montana State Hospital at Warm Springs, Montana, for a period of ninety (90) days.

2. That the physicians at the Montana State Hospital shall have full authority to administer necessary medication to Respondent involuntarily, if Respondent refuses appropriate medication.

3. Respondent shall be immediately transported to Montana State Hospital at Warm Springs, Montana, by the Lincoln County Sheriff's Office.

¶6 On November 5, 2014, C.C. moved to amend the written order to conform to the oral pronouncement noting that the court's oral pronouncement did not include a finding of need nor a hospital authorization for involuntary medication. The District Court denied the motion, holding that its omission regarding involuntary medication was inadvertent.

¶7 C.C. filed a timely appeal.

**ISSUES**

¶8 Did the District Court err when it failed to provide a detailed statement of facts to justify C.C.'s involuntary commitment?

5

¶9 Did the District Court err when its written judgment included a provision for involuntary medication that was not made at the oral pronouncement, was not in compliance with statute, and was not supported by any findings in the record?

## STANDARD OF REVIEW

¶10 Whether a district court's findings of fact meet the statutory requirements is a question of law which we review for correctness. *In re L.L.A.*, 2011 MT 285, ¶ 7, 362 Mont. 464, 267 P.3d 1.

## DISCUSSION

¶11 *Did the District Court err when it failed to provide a detailed statement of facts to justify C.C.'s involuntary commitment?*

¶12 Section 53-21-127(8)(a), MCA, provides:

In ordering commitment pursuant to this section, the court shall make the following findings of fact:

(a) a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment.

¶13 Relying on *L.L.A.*, *In re Mental Health of E.P.B.*, 2007 MT 224, 339 Mont. 107, 168 P.3d 662, and *In re Mental Health of O.R.B.*, 2008 MT 301, 345 Mont. 516, 191 P.3d 482, C.C. asserts that the court's commitment order does not contain a detailed statement of facts as required by § 53-21-127(8)(a), MCA. The State urges us to employ the doctrine of implied findings and conclude the commitment order complies with the applicable statute.

¶14 An involuntary commitment can have calamitous effects on an individual. Such a commitment includes loss of liberty and potential damage to a person's reputation. For

6

these reasons, we have repeatedly stressed the critical importance of strict compliance with the statutory requirements addressing involuntary commitment. *L.L.A.*, ¶ 9.

¶15    In *L.L.A.*, the State's petition presented significant detailed evidence of L.L.A.'s schizophrenic behavior. *L.L.A.*, ¶ 3. Further detailed facts were presented at the district court hearing at the close of which the State indicated it would prepare a commitment order for the court's signature in "less than ten minutes." *L.L.A.*, ¶ 5. The State's order contained seven facts that this Court noted were "derived almost exclusively from the language of § 53-21-126, MCA," but did not reflect L.L.A.'s circumstances or the particular facts that would support the court's commitment order. *L.L.A.*, ¶¶ 10, 13. We further observed that the court's "'conclusory statements of statutory criteria' do not 'constitute strict compliance with the statutory mandate of § 53-21-127(8)(a), MCA.'" Additionally, we concluded that the court's order contained "no indication of the facts upon which it found that, because of her mental disorder, L.L.A. is substantially unable to protect her life and safety or that imminent threat of injury to herself or others will result if she is left untreated." *L.L.A.*, ¶ 11. Based upon the court's failure to strictly adhere to the applicable statutes, we reversed the district court's commitment order. *L.L.A.*, ¶ 22.

¶16    Similarly, in *E.P.B.*, just prior to the close of the initial hearing on Silver Bow County's petition to involuntarily commit E.P.B., the county attorney presented the district court with an order of commitment. The court signed the order and E.P.B. subsequently appealed the sufficiency of the findings. *E.P.B.*, ¶ 4. We stated that "given the deputy county attorney's production of the order before the hearing ended and the lack of any reference to E.P.B.'s testimony—it is relatively clear that the order was

7

prepared before the hearing commenced." *E.P.B.*, ¶ 12. We chastised the district court stating that "a hearing on a petition for involuntary commitment is not merely a *pro forma* requirement, but an opportunity for the parties—both the petitioner and the respondent—to present evidence upon which the trial court can make required findings and enter appropriate orders." *E.P.B.*, ¶ 12. We urged courts to "at the very least— ensure that such 'prepared' orders comply with statutory mandates." *E.P.B.*, ¶ 12. We held that the court did not comply with statutory requirements to present a detailed statement of the facts and reversed and remanded with instructions to enter an order vacating the commitment order. *E.P.B.*, ¶¶ 13-15.

¶17 The State argues that it presented ample evidence on which the District Court could rely in finding that C.C. suffered from a mental disorder requiring her commitment. It advocates that we follow those cases in which we employed the doctrine of implied findings to uphold the court's commitment order. *See, e.g., In re Mental Health of S.C.*, 2000 MT 370, 303 Mont. 444, 15 P.3d 861 and *In re S.M.*, 2014 MT 309, 377 Mont. 133, 339 P.3d 23. In the alternative, the State urges us to remand to the District Court for a supplemental order containing a detailed statement of facts. C.C. counters that the Court's application of the implied findings doctrine to involuntary commitment cases over the past few years has expanded the doctrine into a substitute for statutory compliance. She urges us not to apply it in this case, and to remand for dismissal.

¶18 In *S.C.*, we applied the doctrine of implied findings to an involuntary commitment case for the first time. We stated that where the district court's "findings are general in terms, any findings not specifically made, but necessary to the [determination], are

8

deemed to have been implied, if supported by the evidence." *S.C.*, ¶ 14. In *S.C.*, the district court ordered that "[S.C.] will agree to take medication as prescribed . . . ." *S.C.* ¶ 6. We noted that while the district court made multiple "detailed findings of fact," it did not make specific findings that S.C. was incompetent and required involuntary medication. *S.C.*, ¶¶ 14, 7. This Court, however, employed the doctrine of implied findings, set forth the detailed findings presented by the court, and held that the evidence supported the district court's ruling on involuntary medication. *S.C.*, ¶ 14.

¶19 It was more than a decade before we again considered the application of the doctrine of implied findings in an involuntary commitment case, and we rejected its use in *In re the Mental Health of L.K.-S.*, 2011 MT 21, 359 Mont. 191, 247 P.3d 1100. However, in *In re R.W.K.*, 2013 MT 54, 369 Mont. 193, 297 P.3d 318, the Court again invoked the doctrine to uphold an involuntary medication order, as it had done in *S.C.*

¶20 In *In re S.M.*, we noted that the district court's written order of commitment was "minimally sufficient" and was supported by substantial evidence. *S.M.*, ¶ 30. We therefore applied the doctrine, consulting not just the district court's written findings but also the hearing transcripts to determine if the evidence supported the court's finding that Montana State Hospital was the least restrictive placement for S.M. *S.M.*, ¶ 28.

¶21 Subsequently, in *In re M.P.-L.*, 2015 MT 338, 381 Mont. 496, 362 P.3d 627, the district court issued two commitment orders within three days of one another. We held that the first order was "deficient" in factual detail and failed "to meet the mandatory statutory requirements." *M.P.-L.*, ¶¶ 7, 11. However, the district court's second order included information reflecting M.P.-L.'s circumstances leading to the court's conclusion

that M.P.-L. required commitment. *M.P.-L.*, ¶ 19. We noted that while the court's written findings were "bare-boned," when combined and reviewed in conjunction with the hearing findings they were sufficient to support the district court's ruling on commitment. *M.P.-L.*, ¶ 20.

¶22 Most recently, in *In re S.G.R.*, 2016 MT 70, 383 Mont. 74, 368 P.3d 1180, we applied the doctrine of implied findings after noting that the district court's order of recommitment, while "spartan" nonetheless set forth facts recounted from specific witness testimony from the hearing. *S.G.R.*, ¶ 21. We stated "the order identifies the testimony and evidence on which the court premised its findings. The evidence and testimony support the court's conclusion that S.G.R.'s mental illness required extension of his commitment because he was a 'danger to himself' and was 'unable to appreciate the necessity for a proper medication regimen to control his mental illness.'" *S.G.R.*, ¶ 22.

¶23 The case at bar is analogous to *L.L.A*. Here, the District Court issued an order that was prepared before the evidentiary hearing took place; consequently, the order contained no detailed facts and recounted no testimony that was specific to C.C.'s condition, symptoms, or actions. We decline to expand the doctrine of implied facts to the degree necessary to affirm a commitment order that is beyond "bare-bones" and "spartan." As we have emphasized on numerous occasions, "the statutory requirements of an involuntary commitment must be strictly adhered to by the district courts, including the requirement of detailed findings under § 53-21-127(8)(a), MCA, in order to justify

appropriate decisions and to follow proper procedure." *M.P.-L.*, ¶ 24.  The pre-prepared order signed by the District Court wholly fails to satisfy statutory requirements.

¶24    *Did the District Court err when its written judgment included a provision for involuntary medication that was not made at the oral pronouncement, was not in compliance with statute, and was not supported by any findings in the record?*

¶25    Because we have determined that the District Court's findings of fact are insufficient and are vacating the order of commitment, we need not address this issue.

## CONCLUSION

¶26    For the foregoing reasons, and relying upon established authority, we decline the State's invitation to remand to the District Court for a supplemental order containing a detailed statement of facts.  *L.L.A.*, ¶ 23.  We vacate the District Court's Order of Commitment and its separate Findings of Fact, Conclusions of Law and Order of Commitment and reverse and remand for an order of dismissal.

/S/ PATRICIA COTTER

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

11