Justice Jim Rice delivered the Opinion of the Court.
¶ 1 B.H. appeals from the findings of fact, conclusions of law, and order entered by the Eighteenth Judicial District Court, Gallatin County, committing him to the Montana State Hospital. We affirm and consider the following issue:
Did the District Court commit plain error regarding the procedural safeguards in § 53-21-122(2)(a), MCA, necessitating appellate review?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 B.H. suffers from bipolar disorder. In late 2016 and early 2017, he suffered a severe manic episode during which he acted in ways his wife confirmed were uncharacteristic. She called police, who took B.H. to the emergency room and then to Hope House, a mental health facility in Bozeman. B.H. was uncooperative at Hope House, refusing treatment and stating he just needed a vacation. B.H. left Hope House against medical advice and was thereafter placed at Hays Morris House, a mental health facility in Butte, because Hope House had reached capacity. B.H. was likewise uncooperative at Hays Morris House, where he refused medication, threatened others, got into arguments, repeatedly removed his clothes, and tore baseboards from his room.
¶ 3 Adrian Utsch, a professional person employed by the Gallatin Mental Health Center, conducted a mental health evaluation of B.H. Based on her findings, Utsch sought initiation of a proceeding to involuntarily commit B.H. to the Montana State Hospital. The commitment petition, filed by the Gallatin County Attorney's Office, alleged that B.H. had threatened to kill his father and himself, he suffered from a mental disorder, he was substantially unable to provide for his own basic needs, and he was an imminent threat of injuring himself and others. The State's petition included a list of B.H.'s constitutional and statutory rights.
¶ 4 The District Court, pursuant to § 53-21-122, MCA, determined probable cause existed that B.H. suffered from a mental disorder requiring commitment, appointed counsel for B.H., and scheduled an initial hearing on the State's petition for January 9, 2017. B.H. attended his initial hearing via video from Hays Morris House in Butte. B.H.'s counsel was present in the courtroom, as was counsel for the state. At the outset of the hearing, B.H. acknowledged that he had seen the State's petition. After a discussion concerning whether B.H. needed an interpreter, because he kept answering the court in Spanish, B.H. asked whether the court could appoint Eduardo Garcia as his friend. The court agreed to do so, and at that point, B.H. interrupted, whereupon the following exchange occurred:
B.H.: I can have Amanda speak for me. She's right here.
The Court: Okay, well, Mr.-
B.H.: I will remove myself from the situation right now.
The Court: Okay.
B.H.: Will that speed things up?
*1009 The Court: Well, [B.H.], you don't have to because I, let me tell you what's going to happen.
B.H.: He's not listening. I'm going to go out (indecipherable).
The Court: All right. So, let the record show that [B.H.] has decided to step out of the hearing room. He has the right to do that....
...
The Court: Showing that [B.H.] did appear for this hearing by video until he left the room; that I did not have a chance to advise him of his rights but Mr. Rutzke [counsel for B.H.], were you able to do that to a limited extent or?
Mr. Rutzke: I was not, Your Honor. I was not. I will make-
Female Voice: Do you want him to get a copy of his rights?
The Court: Yeah, he will-there's a copy of his rights attached to the Petition, ma'am, but also, I mean-
Female Voice: Okay.
The Court: -that really what-
Female Voice: Okay.
The Court: -his most important right is he has a right to remain silent and he has a right to the hearing and I'm granting him the hearing-
Female Voice: Um hum (yes).
The Court: -so the fact that his rights have not been affected in any way. I mean I'm protecting his rights basically.
Female Voice: Um hum (yes).
¶ 5 Later, B.H. re-entered the hearing room. The court informed B.H. that a mental health evaluation would be performed by a professional person prior to the commitment hearing, and asked whether B.H. would like a second opinion. The court then scheduled a contested hearing for two days later, on January 11.
¶ 6 At the January 11 hearing, the State presented three witnesses, including two certified professional persons and B.H.'s wife. When B.H. interjected during testimony, the court advised him, "before you say anything to me you need to clear it with ... Mr. Rutzke[,]" because "Mr. Rutzke is here to protect you." B.H. then consulted with Mr. Rutzke and took the stand to offer testimony. After all the evidence had been presented, the District Court noted for the record that "the Court finds and concludes that [B.H.], throughout this proceeding, has received the benefit of all applicable statutes and Constitutional rights to which he is entitled."
¶ 7 After testimony concluded, the District Court orally summarized its findings of fact and conclusions of law and committed B.H. to the Montana State Hospital for a period not to exceed 90 days. Neither Mr. Rutzke nor B.H. objected at any time during the proceedings that the court had failed to properly advise B.H. of his rights or that B.H.'s rights had been violated.
¶ 8 B.H. appeals.
STANDARD OF REVIEW
¶ 9 We review a district court's civil commitment order "to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct." In re M.K.S. , 2015 MT 146, ¶ 10, 379 Mont. 293, 350 P.3d 27 (citation omitted). "Issues of due process in an involuntary commitment proceeding are subject to plenary review." In re M.K.S. , ¶ 10 (citation omitted).
DISCUSSION
¶ 10 As an initial matter, we observe that B.H.'s appeal of his involuntary commitment is not moot despite the expiration of his 90-day commitment period, because the time period is too short to allow litigation of the appeal, and there is a reasonable possibility that he could be subject to the same action again. In re M.K.S. , ¶ 11. Appeals from involuntary commitments thus fall into an exception to the mootness doctrine for issues that are "capable of repetition, yet evading review." In re M.K.S. , ¶ 11 (citations and internal quotations omitted).
¶ 11 Did the District Court commit plain error regarding the procedural safeguards in § 53-21-122(2)(a), MCA, necessitating appellate review?
¶ 12 B.H. argues that the District Court erred by failing to advise him of his *1010 constitutional and statutory rights during his initial appearance, as required in civil commitment proceedings under § 53-21-122(2)(a), MCA. Beyond the advisory requirement, B.H. does not argue that any of his rights were violated. The State acknowledges that the advisory of rights was not provided to B.H. as required by the statute.
¶ 13 B.H. made no objection regarding a rights advisory before the District Court. On appeal, he specifically disclaims he is seeking plain error review of his claim, and instead cites two older commitment cases that state "an exception exist[s]" to the "general rule that issues cannot be raised for the first time on appeal.... where, as in the case of a civil commitment, the substantial rights of an individual were involved." Matter of R.M. , 270 Mont. 40, 45, 889 P.2d 1201, 1204-05 (1995) (citing In re N.B. , 190 Mont. 319, 323, 620 P.2d 1228, 1231 (1980) ); see also In re Mental Health of A.S.B. , 2008 MT 82, ¶ 20, 342 Mont. 169, 180 P.3d 625. B.H. argues that "[a] plain error analysis is not applicable when the district court is fully aware of the law and the legal issue at hand."
¶ 14 The statements from the cases cited by B.H. regarding appellate review of unpreserved issues affecting a litigant's substantial rights were, although not expressly denominated as such, part of what became this Court's plain error review doctrine. First formulated specifically in State v. Finley , 276 Mont. 126, 915 P.2d 208 (1996), overruled in part on other grounds by State v. Gallagher , 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817, wherein appellate review of unpreserved issues was acknowledged "where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process," Finley , 276 Mont. at 137, 915 P.2d at 215, the doctrine has encapsulated earlier statements, such as in In re N.B ., 190 Mont. at 323, 620 P.2d at 1231 ("[t]his Court reserves to itself the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law"), and applied uniform standards to application of the Court's inherent constitutional power of review. See In re M.K.S. , ¶ 13 ("We invoke plain error review 'where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process'.... We have repeatedly stated that we will use plain error review sparingly and on a case-by-case basis.") (internal citations and quotations omitted). Citing Finley , we recognized the applicability of the doctrine for review of unpreserved issues in involuntary commitment proceedings in In re Mental Health of J.D.L. , 2008 MT 445, ¶¶ 6-9, 348 Mont. 1, 199 P.3d 805, superseded by statute on other grounds , § 53-21-122(2)(b), MCA, as recognized in In re C.R. , 2012 MT 258, ¶ 23, 367 Mont. 1, 289 P.3d 125. Thus, common law appellate review of unpreserved issues is now consolidated under the plain error review doctrine, including for civil commitment proceedings. See In re B.O.T. , 2015 MT 40, ¶ 22, 378 Mont. 198, 342 P.3d 981 ("[W]e held in [In re J.D.L. ], ¶ 9, that the Court will exercise plain error review in an involuntary commitment proceeding to consider unpreserved error.").
¶ 15 It remains true that this Court will not generally consider issues raised for the first time on appeal, In re M.K.S. , ¶ 13, and that, to obtain plain error review, "we still require the assertion of plain error to be raised and argued on appeal." In re B.O.T. , ¶ 22. While the State argues that B.H. has here failed to request plain error review of his unpreserved issue, we deem B.H.'s briefing, while based on early authority, to have requested exercise of this Court's "inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document," In re J.D.L. , ¶ 6, which is now denominated as plain error review.
¶ 16 Seeking plain error review, B.H. bears the burden of establishing that: "(1) the alleged error implicates a fundamental right; and (2) failure to review the alleged error would result in" a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.
*1011 In re M.K.S. , ¶¶ 13-14. "A mere assertion that a constitutional right is implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." In re M.K.S. , ¶ 14 (citations omitted).
¶ 17 Under the second prong, we have " 'weigh[ed] the risk of depriving an individual's liberty against the probable value of the procedure in question,' " In re M.K.S. , ¶ 18 (quoting In re N.A. , 2013 MT 255, ¶ 23, 371 Mont. 531, 309 P.3d 27 ), which, in this case, is the statutory advisement of the respondent's rights. " '[N]ot all errors of state law amount to deprivation of procedural due process; rather, we employ a flexible balancing test to determine whether a particular safeguard is required in a specific circumstance.' " In re M.K.S. , ¶ 18 (quoting In re N.A. , ¶ 23 (citing Engle v. Isaac , 456 U.S. 107, 121 n.21, 102 S.Ct. 1558, 1568 n.21, 71 L.Ed.2d 783 (1982) and Mathews v. Eldridge , 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976) ) ). We have stated that, "when a procedural error results in no substantial prejudice to a party, the error is de minimis and does not affect an individual's liberty interest." In re M.K.S. , ¶ 18 (citing In re Mental Health of O.R.B. , 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482 ); see also In re A.S.B. , ¶ 36. B.H. argues that advising him of his rights "would have informed the nature of his discussions with the professional person, and it would have informed his litigation choices at the evidentiary hearing."
¶ 18 Civil commitments in Montana are governed by Title 53, Chapter 21, MCA. We require strict adherence to our civil commitment statutes, "given the utmost importance of the rights at stake in such proceedings, and the 'calamitous effect of a commitment, including loss of liberty and damage to a person's reputation.' " In re R.H. , 2016 MT 329, ¶ 10, 385 Mont. 530, 385 P.3d 556 (citation omitted). Section 53-21-122, MCA, requires, in relevant part, the district court to determine whether probable cause exists to support an involuntary commitment. Section 53-21-122(2)(a), MCA. Upon a finding of probable cause, the court must appoint counsel for the respondent and hold an initial hearing during which the respondent is advised of his or her constitutional rights, statutory rights, and the effect of the petition supporting involuntary commitment. Section 53-21-122(2)(a), MCA. The court must also appoint a professional person and set a date and time for the hearing on the petition for involuntary commitment. Section 53-21-122(2)(a), MCA.
¶ 19 Here, the District Court found that probable cause existed, appointed counsel for B.H., and held an initial hearing on January 9, 2017. During that hearing, the court attempted to advise B.H. of his rights and the effect of the petition. However, B.H. interrupted the court several times and left the hearing room, stating that a woman he referred to as "Amanda" could speak for him. The court encouraged B.H. to stay, saying it would inform B.H. of what would happen, but B.H. replied, "[h]e's not listening," and left the room. The court then noted that B.H. had a right to leave, and asked counsel if he had advised B.H. of his rights. Counsel said no, and upon interjection by "Amanda," the court discussed B.H.'s rights and stated that his rights would be protected. Upon B.H.'s return to the hearing room, the court set the date and time for a hearing and appointed a professional person, as well as a friend, at B.H.'s request. No objections or further questions were offered by either B.H. or his counsel.
¶ 20 We have declined to reverse for lack of strict compliance with Montana's involuntary commitment statutes where we concluded the asserted error did not impact the respondent's rights in a way that "would leave unsettled the fundamental fairness of the proceedings, compromise the integrity of the judicial process, or create a manifest miscarriage of justice." In re M.K.S. , ¶ 24. In In re M.K.S. , M.K.S. would not speak with the appointed professional person during her evaluation, so the professional person advised M.K.S. that his recommendation to the court, if she refused to speak with him, would need to be based upon her most recent history. In re M.K.S. , ¶ 6. M.K.S. continued her refusal to cooperate with the evaluation, and the professional person did not file a written report of his findings and recommendations *1012 with the court as required by § 53-21-123, MCA. In re M.K.S. , ¶ 6. M.K.S. did not object to the absence of a written report and proceeded with the hearing, after which the court committed her to the Montana State Hospital. In re M.K.S. , ¶¶ 8, 9. On appeal, M.K.S. asserted a due process violation because of the lack of a professional person's report as required by § 53-21-123, MCA, and sought reversal of her commitment. In re M.K.S. , ¶¶ 9, 15. She argued that "the written report was essential to her ability to defend against the State's petition, and to the District Court's ability to be adequately informed about why [the psychologist] believed it appropriate to recommend commitment to [Montana State Hospital] when, in the past, commitment to a community program had been sufficient." In re M.K.S. , ¶ 15.
¶ 21 We concluded based on a review of the record that "the failure to file a written report with the court did not prejudice M.K.S.'s ability to defend against allegations contained in the petition or presented by [the psychologist's] testimony." In re M.K.S. , ¶ 20. M.K.S.'s counsel had the opportunity to cross-examine the psychologist and did so without any objection to the absence of a written report. In re M.K.S. , ¶ 20. We concluded that "[i]f M.K.S.'s counsel believed the failure to file a written report inhibited her defense or preparation, counsel could have objected to the lack of a report and the defect could have been remedied." In re M.K.S. , ¶ 20. Thus, we reasoned that M.K.S. had "failed to meet her burden to demonstrate" the second prong of the test, and declined "to reverse the judgment of commitment based on the plain error doctrine." In re M.K.S. , ¶ 24.
¶ 22 A similar reasoning applies here. The record demonstrates the District Court's concern over the protection of B.H.'s rights, including that he be properly advised of his rights, and that it cautioned him in relation to his rights to silence and counsel during the commitment hearing. While district courts must proactively ensure that a respondent's rights are protected-even where a respondent's actions make it challenging, as here-a simple objection or even suggestion by counsel that a statutory requirement had not been satisfied would have alerted the District Court to the problem, which it then could have easily remedied, perhaps during the commitment hearing. "Failure to make contemporaneous objection deprives the court from opportunity to correct the error, if any...." In re Marriage of Williams , 2018 MT 221, ¶ 22, 392 Mont. 484, 425 P.3d 1277.
¶ 23 B.H. noted his review of the commitment petition, to which a written statement of his rights was attached. Like the resistance encountered in In re M.K.S. , the District Court attempted to comply with Montana's civil commitment statutes, though faced with resistance by B.H. The District Court attempted to advise B.H. of his rights but was interrupted by B.H.'s actions, after which the court discussed B.H.'s rights during the initial hearing, and stated that B.H.'s rights would be protected. During the commitment hearing, the District Court admonished B.H. consistent with his rights. While the District Court did not provide a complete advisory of rights to B.H., we conclude B.H. has not established that the error resulted in "a manifest miscarriage of justice," left "unsettled the question of the fundamental fairness of the trial or proceedings," or "compromise[d] the integrity of the judicial process." In re M.K.S. , ¶ 13 (internal quotations and citations omitted). There is little "risk" that B.H.'s liberty interest was in any way deprived by the manner in which this proceeding was conducted, and the error did not result in substantial prejudice. In re M.K.S. , ¶ 18. Therefore, we decline to exercise plain error review.
¶ 24 Affirmed.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
¶ 25 I respectfully dissent from the Court's holding. The Court frames the issue as whether the District Court committed plain error regarding procedural safeguards. The *1013 procedural safeguards at issue are the mandatory advisement of constitutional rights, statutory rights, and the substantive effect of the petition, as well as an advisement of the process involving the professional person who would be making a recommendation to the Court as to the degree to which B.H.'s liberty would be restricted. There is no dispute that this advisement was not given by the Court, nor did B.H.'s counsel advise him of these rights. Based on the record before us, B.H. went into a process that ultimately resulted in his involuntary commitment to Montana State Hospital (MSH) blind as to what his rights in this process were. Irrespective of the District Court's efforts to ensure his rights were protected at the evidentiary hearing, I cannot conclude that the failure to advise B.H. of his rights at the inception of the process may not have resulted in a manifest miscarriage of justice, left unsettled the question of the fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process. Thus, I would exercise plain error review.
¶ 26 Section 53-21-122(2)(a), MCA, mandates:
The respondent must be advised of the respondent's constitutional rights, the respondent's rights under this part, and the substantive effect of the petition. The respondent must also be advised that the professional person appointed to conduct the examination under 53-21-123 will include in the professional person's report a recommendation about whether the respondent should be diverted from involuntary commitment to short-term inpatient treatment provided for in 53-21-1205 and 53-21-1206 or to a category D assisted living facility as provided in 50-5-224.
B.H. was not advised of his constitutional rights. He was not advised of his statutory rights.[1] He was not advised of the substantive effect of the petition. Although he was advised that a professional person would be conducting an evaluation, he was not advised that she would be making a recommendation to the Court about whether he should be involuntarily committed or diverted to short-term inpatient treatment or an assisted living facility. The evaluation then proceeded prior to the evidentiary hearing.
¶ 27 Trial courts have a duty to "safeguard the due process rights of the individual involved at every stage of the proceeding ." In re L.K.-S. , 2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100 (quoting In re L.C.B. , 253 Mont. 1, 7, 830 P.2d 1299, 1303 (1992) ) (emphasis added). That certainly would include the very inception of the proceeding, when a respondent is to be advised of the process that lies ahead and what his rights are in the impending process. As B.H. noted, had he been properly advised of his rights, this "would have informed the nature of his discussions with the professional person...." Yet prior to his evaluation, B.H. was not even advised that the professional person would be making a recommendation to the Court as to the nature of his commitment. After evaluating B.H. before the evidentiary hearing, the professional person recommended that he be committed to MSH for up to 90 days-a recommendation the District Court followed.
*1014 ¶ 28 Statutes governing involuntary commitment are to be strictly followed due to the "calamitous effect of a commitment," which includes the potential loss of liberty and injury to a respondent's reputation. In re R.H. , 2016 MT 329, ¶ 10, 385 Mont. 530, 385 P.3d 556 ; In re A.K. , 2006 MT 166, ¶ 11, 332 Mont. 511, 139 P.3d 849. We have repeatedly stressed the critical importance of strict compliance with statutory requirements when addressing involuntary commitment because of the individual rights at stake. In re C.C , 2016 MT 174, ¶ 14, 384 Mont. 135, 376 P.3d 105 ; In re L.K.-S , ¶ 15 ; In re L.L.A ., 2011 MT 285, ¶ 9, 362 Mont. 464, 267 P.3d 1. The statutes authorizing involuntary commitment are to be strictly applied to ensure that the "government does not invade an individual's freedom or liberty without due notice, cause and process." In re M.K.S. , ¶ 16 ; In re J.D.L. , ¶ 8 (quoting In re R.M. , 270 Mont. at 45-46, 889 P.2d at 1205 ). Although I appreciate that the District Court's job was made more difficult by B.H.'s disruption at the initial hearing, it is not disputed that the District Court did not comply with the mandates of § 53-21-122(2)(a), MCA. Notwithstanding the District Court's efforts to ensure B.H.'s rights were protected at the evidentiary hearing, the process was fundamentally compromised by the failure to advise B.H. of his rights at the initial hearing as required by § 53-21-122(2)(a), MCA. I would thus conclude that the District Court's error left unsettled the question of the fundamental fairness of B.H.'s proceeding, or compromised the integrity of the judicial process. See In re M.K.S. , ¶ 13. I would therefore exercise plain error and I would reverse and vacate the commitment order.
¶ 29 For the foregoing reasons, I dissent.
Justice Laurie McKinnon joins in the dissenting Opinion of Justice Shea.

Pursuant to § 53-21-115, MCA, among the rights of which B.H. should have been advised, but was not are:
(1) the right to notice reasonably in advance of any hearing or other court proceeding concerning the person;
(2) the right to any hearing to be present, to offer evidence, and to present witnesses in any proceeding concerning the person;
(3) the right to know, before a hearing, the names and addresses of any witnesses who will testify in support of a petition;
(4) the right in any hearing to cross-examine witnesses;
(5) the right to be represented by counsel;
(6) the right to remain silent;
(7) the right in any hearing to be proceeded according to the rules of evidence applicable to civil matters generally;
(8) the right to view and copy all petitions on file with the court concerning the person;
(9) the right to be examined by a professional person of the person's choice when the professional person is willing and reasonably available;
(10) the right to be dressed in the person's own clothes at any hearing held pursuant to this part;
(11) the right to refuse any but lifesaving medication for up to 24 hours prior to any hearing held pursuant to this part; and
(12) the right to voluntarily take necessary medications prior to any hearing pursuant to this part.